**ESTATE of William A. WEBBER, Sr., Deceased, William A. Webber, Jr., Executor, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 18108.**

United States Court of Appeals
Sixth Circuit.

Dec. 4, 1968.

Jack F. Mattingly, of Gess, Mattingly, Saunier & Atchison, Lexington, Ky., for appellant.

Bennett N. Hollander, Atty., Department of Justice, Washington, D. C., for appellee; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson Attys., Dept. of Justice, Washington, D. C., on brief; George I. Cline, U. S. Atty., Lexington, Ky., of counsel.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

The taxpayer has appealed from a judgment of the District Court in favor of the Government, in an action for refund of income taxes alleged to have been illegally assessed and collected from the decedent's estate.

The question presented is whether the distribution received in the redemption by a closely held corporation of fifty per cent of its common shares owned by the decedent's estate, should be accorded capital gains treatment, as contended by the estate,[1] or should be treated as a dividend and included in gross income, as claimed by the Government.[2]

William A. Webber, Sr. and his son, William A. Webber, Jr., each owned twenty-five hundred shares of common stock of Webber Sausage Company, which was all of the issued and outstanding stock of the company. They entered into a written agreement with the corporation on January 12, 1959, whereby they agreed to sell their shares to the corporation for book value within a period of eighteen months from the date of death of said parties or either of them.

Webber, Sr. died testate, a resident of Kentucky, on May 5, 1959, and Webber, Jr. is the duly appointed executor of his will. The will bequested and devised to Webber, Jr. a house and tract of land and $70,000 in cash, to be paid to him by the executor as soon as possible after testator's death. The residue of the estate was left in trust to testator's three daughters. Webber, Jr. acquired fee simple title to the house and tract of land as of the date of death of his father. He received the $70,000 cash bequest on June 23, 1959.

In accordance with the agreement, the corporation redeemed the shares owned by the estate on July 14, 1959 for $235,-835.02, which was the book value of the shares and also their value for federal estate tax purposes.

Federal estate taxes in the amount of $62,999.32 were paid by the executor on February 29, 1960, with the filing of the federal estate tax return, and an additional sum of $3,935.30, plus interest of $271.33, was paid on October 29, 1961. The executor paid Kentucky inheritance taxes of $8,312.87, of which the share of Webber, Jr. was $2,211.32. He reimbursed the estate for his share of the inheritance tax on October 5, 1962.

Webber, Jr. has not reimbursed the estate or the residuary beneficiaries for that portion of the federal estate tax attributable to his share of the estate.

The Commissioner assessed a deficiency in income tax against the estate in the sum of $104,935.66, plus interest in the amount of $33,065.42, and a penalty in the amount of $26,233.92. The Commissioner assessed this deficiency claiming that the distribution by the corporation to the estate did not qualify as a redemption within Section 302 of the 1954 Code[3] and it was, therefore, a distribution in the nature of a dividend governed by Section 302(c) which requires ordinary income treatment. Claim for refund was filed and the action in the District Court was commenced when the claim was not acted upon within six months.

The District Judge, in a well-considered opinion[4], denied the taxpayer's motion for summary judgment and granted summary judgment in favor of the Gov-

---

1. Int.Rev.Code of 1954, § 302(b) (3), (26 U.S.C. 1964 ed., Sec. 302(b) (3)).

2. Int.Rev.Code of 1954, § 318(a) (2), (26 U.S.C. 1958 ed., Sec. 318); Treas. Reg. § 1.318–3, 26 C.F.R. Sec. 1.318–3.

3. Int.Rev.Code of 1954, § 302(d), (26 U.S.C.1964 ed., Sec. 302(d)).

4. Estate of Webber v. United States, D.C., 263 F.Supp. 703 (1967).

ernment, dismissing the complaint. The parties stipulated that the claim for recovery of the penalty be dismissed.

Section 302(b) (3), on which the taxpayer relies, provides for capital gain treatment "if the redemption is in complete redemption of all of the stock of the corporation owned by the stockholder."

In determining the ownership of stock, Section 318(a) (2) (A) of the 1954 Code applies. Section 318(a) provides that stock owned by "a beneficiary of an estate shall be considered as owned by the * * * estate." [5]

Section 1.318–3(a) of the Treasury Regulation on Income Tax defines "beneficiary" as follows:

"The term 'beneficiary' includes any person entitled to receive property of a decedent pursuant to a will or pursuant to laws of descent and distribution. A person shall no longer be considered a beneficiary of an estate when all the property to which he is entitled has been received by him, when he no longer has a claim against the estate arising out of having been a beneficiary, and when there is only a remote possibility that it will be necessary for the estate to seek the return of property or to seek payment from him by contribution or otherwise to satisfy claims against the estate or expenses of administration."

The only question presented is whether, on the date of redemption, Webber, Jr. was a "beneficiary" of the estate within the meaning of the above regulation. He claims that he was not since the devises and bequests had all been distributed to him prior to the redemption. He contends that the redemption was for all of the shares owned by the estate.

The trouble in this case arises due to the unusual manner in which the estate was handled. State inheritance and federal estate taxes are priority claims against the estate and are entitled to payment prior to distribution of the estate to the devisees and legatees. Here, this rule was not followed. Within a few weeks after the executor was appointed and before the tax returns were filed, the executor made distribution to himself of that portion of the estate to which he was entitled.

 Under Kentucky law, federal estate taxes and Kentucky inheritance taxes are required to be shared proportionately by all of the beneficiaries in the absence of a specific direction in the will. Louisville Trust Co. v. Walter, 306 Ky. 756, 207 S.W.2d 328 (1948); Trimble v. Hatcher's Ex'rs, 295 Ky. 178, 173 S.W.2d 985 (1943), cert. denied 321 U.S. 747, 64 S.Ct. 611, 88 L.Ed. 1049; Martin v. Martin's Adm'r, 283 Ky. 513, 142 S.W. 2d 164 (1940); Hampton's Adm'rs v. Hampton, 188 Ky. 199, 221 S.W. 496, 10 A.L.R. 515 (1920). The personal representative who has paid the federal estate taxes is subrogated to the rights of the Government against legatees and devisees against whom the tax claim could have been enforced. Trimble v. Hatcher's Ex'rs, supra 295 Ky. at 186, 173 S.W.2d 985.

Webber, Jr. has not reimbursed the estate for that portion of the federal estate tax attributable to the share in the estate distributed to him and for which he is legally liable. The District Court correctly held that there was more than a remote possibility that it will be necessary for the estate to seek return of property or to seek payment from the beneficiary to satisfy claims against the estate. Under the Treasury Regulation quoted above, Webber, Jr.'s status as beneficiary has never terminated.

In order for the redemption to qualify for capital gains treatment under Section 302(b) (3), it must satisfy the requirements of Section 318 of the 1954

---

5. See 26 U.S.C. 1964 ed., Sec. 302(c). The purpose of adopting the attribution rules of Section 318 was to prevent tax avoidance by the distribution of earnings and profits of a corporation by means of a stock redemption, and to provide definite guidelines for taxpayers. 3 U.S. Code Cong. & Ad.News (1954) pp. 4017, 4060–4061.

Code; otherwise it will be treated as ordinary income.

Prior to the 1954 Code, a distribution in redemption of stock was taxable as ordinary income if it was "essentially equivalent to the distribution of a taxable dividend." [6] This criteria was substantially retained in the 1954 Code[7]. Since, however, the test used in the 1939 Code was not thought to be clear, Section 302(b) was structured to provide definite conditions under which stock could be redeemed, in addition to the general test retained from the 1939 Code.

No claim was made in the District Court, nor in this Court, that Section 302(b) (1) of the 1954 Code applied, and we, therefore, have not considered whether the redemption was "essentially equivalent to a dividend," and we express no opinion on the subject.

Affirmed.

---

6. Int.Rev.Code of 1939, § 115, (26 U.S.C. 1952 ed., Sec. 115).

7. 26 U.S.C. 1964 ed., Sec. 302(b) (1).